In the Matter of the Appraisal of the Estate of HENRY B. HART, Deceased, under the Acts in Relation to Taxable Transfers of Property.

THEODORE W. MYERS, as Executor of the Estate of HENRY B. HART, Deceased, Appellant; CHARLES A. PERKINS, District Attorney of the County of New York, Respondent.

First Department, July 13, 1917.

Tax — transfer tax — practice — continuance of appraisal before new appraiser not authorized.

A transfer tax appraisal ends with the death, resignation or removal of an appraiser and on the appointment of a new appraiser he must proceed *de novo* in order that the enforcible tax may be imposed.

Hence, where a former appraisal was never completed and an appraiser subsequently appointed carried on the former proceeding without further notice to interested parties, the assessment is unenforcible.

APPEAL by Theodore W. Myers, as executor, from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 1st day of February, 1917, requiring the executor to pay forthwith the sum of $215.58, the amount of the transfer tax imposed on the cash value of the interest of the beneficiaries of the five per cent class under the will, with interest at ten per cent from the 3d day of April, 1893.

The opinion of the surrogate is reported in *Matter of Hart* (98 Misc. Rep. 515).

*H. H. Nordlinger* [*George H. Engelhard* with him on the brief], for the appellant.

*Schuyler C. Carlton*, for the respondent State Comptroller.

LAUGHLIN, J.:

This proceeding was instituted by the district attorney under section 235 of the Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62). On the 1st day of November, 1888, the testator executed a deed of trust to one Myers, who afterwards became his executor, and to one Harmon H. Hart. By it he transferred to the trustees the sum of $10,000 in trust to pay the income to himself during life unless the trust should cease by his marriage or the death of either of the trustees, and in that case the corpus was to be returned to him; but in the event that he died without marrying, the trust deed provided that the fund should be paid over as he might by will appoint, and if he failed so to appoint, then to his next of kin as if he had died intestate and possessed of the property. The settlor of the trust did not marry, but he executed a will on the 4th day of March, 1893, disposing of all of his property, without, however, any specific reference to the deed of trust. He died on April 3, 1893. The will was admitted to probate on the 25th day of July, 1893, and letters issued to the appellant. On the 20th of August, 1904, the surrogate, on application *ex parte* by the State Comptroller,

appointed a transfer tax appraiser and he gave notice by mail to the executor and to all parties in interest that he would appraise the estate at a time and place specified. It appears by affidavit that there was no appearance pursuant to that notice and that no proof was submitted and that nothing further was done by the appraiser. On the 1st of February, 1907, another appraiser was appointed on an *ex parte* application, and it appears by affidavit that he gave notice of a time and place when he would appraise the estate, but it does not appear whether or not there was any appearance pursuant to that notice or whether any proof was submitted. It does appear, however, that that appraiser resigned without having filed a report and that another appraiser was appointed in his place on the 9th day of January, 1909, and that he resigned without having filed a report, and that on the 28th day of February, 1912, one Garvin was appointed in his place. It does not appear what, if anything, Garvin did, or how his appointment was terminated, but on the 6th day of April, 1912, one Cuddihy was appointed appraiser, and on the 4th of October, 1912, he reported an appraisal to the Surrogate's Court in which he stated that notice had been duly given by mail by a former appraiser and that a hearing was had by a former appraiser and that, therefore, he dispensed with giving any further notice, and that on the record of a hearing by a former appraiser he appraised the estate. What that record is does not appear. The order of the surrogate from which the appeal is taken was based on that report. One of the bequests was of $1,000, but each of the other was less than $500.

The appellant concedes that the $1,000 bequest was subject to a transfer tax, but claims that the others were exempt on the ground that they passed under the deed of trust and not under the will and that under the provisions of the statute as it existed at the time of the execution of the deed of trust a bequest of less than $500 was exempt. (See Laws of 1887, chap. 713, § 1, amdg. Laws of 1885, chap. 483, § 1; *Matter of Howe,* 112 N. Y. 100; *Matter of Cager,* 111 id. 343.) Between the creation of the trust and the death of the settlor, who by his will made an appointment with respect to the disposition of the fund, the law had been

changed by chapter 399 of the Laws of 1892, so as to impose a tax upon the gross amount of the estate instead of upon the individual bequests, as theretofore. The contention of the appellant that the beneficiaries took under the deed of trust and not under the will making an appointment, is based on the decisions stating that to be the general rule. (See *Matter of Harbeck,* 161 N. Y. 211; *Matter of Stewart,* 131 id. 274; *Genet* v. *Hunt,* 113 id. 158; *Matter of Webber,* 151 App. Div. 539.) A transfer tax is now imposed on the exercise of a power of appointment; but as that law was enacted subsequent to the death of the testator it is not applicable here. (Laws of 1897, chap. 284. And see *Matter of Burgess,* 204 N. Y. 265.) It is not at all clear that the general rule to which reference has been made is applicable to such a trust as that created by the testator here, which was in his own favor, nor is it clear that it was not revocable; but we refrain from deciding those questions on this record for the reason that we are of opinion that there has been no legal appraisal. We think that a transfer tax appraisal ends with the death, resignation or removal of an appraiser and that each appraiser must proceed *de novo.* The transfer tax could not be validly determined without notice to the parties interested and an opportunity to be heard, and the Legislature has so provided. There is no statutory provision continuing an appraisal proceeding commenced before one appraiser and permitting his successor to take up and complete his work and no decision sustaining the exercise of such power in a similar case is cited or has been found.

It follows, therefore, that the order should be reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.

CLARKE, P. J., SCOTT, DAVIS and SHEARN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.